IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RITA MCCLURE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 2:16cv226-WC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

**I. INTRODUCTION**

Rita McClure ("Plaintiff") filed an application for supplemental security income on September 14, 2009. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester*

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill shall be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

*v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 17); Def.'s Consent to Jurisdiction (Doc. 16). Based on the court's review of the record and the briefs of the parties, the court REVERSES the decision of the Commissioner and REMANDS this matter to the Commissioner for further consideration.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?

---

[3]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(5) Is the person unable to perform any other work within the economy?
An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

3

("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-five years old on the date she filed her application (Tr. 26), and had completed an Associate's degree in junior college. Tr. 40-41. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since February 4, 2013, the amended alleged onset date[.]" Tr. 22. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "status post revision of urethral sling (2011); status post sling procedure (2010); and residuals including retention of urine requiring occasional catheterization." Tr. 22. In addition, the ALJ found that Plaintiff suffers from the non-severe impairments of renal colic, cystitis, and obesity. Tr. 22. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 22. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant is not limited in the use of her upper or lower extremities. The claimant can occasionally climb ramps, stairs, ladders and scaffolds. The claimant cannot climb ropes or poles. The claimant can frequently balance, stoop, kneel and crouch. This individual can occasionally crawl. The claimant can frequently work in humidity, wetness, and extreme temperatures. The claimant can frequently work in dusts, gases, odors and fumes. The claimant can occasionally work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant can

5

> occasionally work with operating hazardous machinery. The claimant is not limited with the operation of motorized vehicles. The claimant can occasionally work while exposed to vibration.

Tr. 23. The ALJ next concluded at Step Four that Plaintiff, who had spent more than ten years serving as a missionary in Romania prior to returning home due to her medical issues, "has no past relevant work." Tr. 26. However, the ALJ next found that, given Plaintiff's RFC, and based upon the testimony of the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 26. The ALJ noted the following representative occupations: "driver, helper, sales route," "food service worker, hospital, dietary aide," "caretaker," and "counter supply worker." Tr. 27. Accordingly, at Step Five, the ALJ determined that Plaintiff "has not been under a disability . . . since January 29, 2013, the date the application was filed[.]" Tr. 27.

## IV. PLAINTIFF'S ARGUMENT

Plaintiff presents four issues in her "Statement of the Issues," arguing that the ALJ's decision should be reversed because: 1) "[t]he ALJ improperly rejected the opinions of [Plaintiff's] board certified treating physician;" 2) "[t]he ALJ's determination as to [Plaintiff's RFC] was improper" in that "it was not supported by substantial evidence[,]" "did not provide appropriate rationale, nor specific references to the evidence which allegedly supported it[,]" and "did not address [Plaintiff's] non-exertional impairments;" 3) "[t]he ALJ improperly dismissed [Plaintiff's] subjective testimony;" and 4) "[t]he ALJ failed to address the testimony" of the separate vocational experts who both testified at the hearing and submitted responses to post-hearing interrogatories submitted by the ALJ.

Pl.'s Br. (Doc. 13) at 3-4. Because the court finds issue one dispositive of this matter, the court below addresses only that issue and pretermits discussion of the other issues raised by Plaintiff.

## V.   DISCUSSION

Plaintiff began seeing her treating physician, Dr. Moore, in April 2011, after her return from her missionary service in Romania. Tr. 324. Dr. Moore is "board certified in Female Pelvic Medicine and Reconstructive Surgery, and in Obstetrics and Gynecology." Tr. 342. Dr. Moore performed surgery on Plaintiff in May of 2011 "to revise and repair" the surgical implant Plaintiff received in Romania in 2010. Tr. 342. Plaintiff saw Dr. Moore again in March of 2013 for her "[a]nnual exam and pap smear." Tr. 288. She complained that it felt like "something is dropping in her vaginal area again," and that she has "urinary infections once a month." Tr. 288. She indicated to Dr. Moore that she needed "a cath again from time to time in 2012[,]" and that she had "started getting more UTI's." Tr. 288. Dr. Moore noted "some resistance" when inserting a catheter and noted Plaintiff's report of similar issues when self-cathetering. Tr. 289. Plaintiff returned to Dr. Moore in October of 2013, complaining of frequent urinary tract infections. Tr. 318. Dr. Moore observed that a cystoscopy performed at this visit "confirmed continued malfunction of the bladder sling surgery." Tr. 342. In May of 2014, Plaintiff returned to Dr. Moore and complained of severe pain in her right side and back, "moving down to her leg," and that she was having problems with self-catheterizing herself. Tr. 314. She indicated that her issues had improved after the second surgery in May of 2011, but were lately "coming

back." Tr. 314. Dr. Moore found it "very difficult" to catheterize Plaintiff, but succeeded in removing "300 cc residual." Tr. 315. Dr. Moore discussed medicinal and surgical options to address Plaintiff's condition and advised her to "call when ready for surgery." Tr. 316.

Against this backdrop of Dr. Moore's years-long treatment of Plaintiff, Dr. Moore offered the opinion evidence that Plaintiff faults the ALJ for failing to credit. First, on June 11, 2014, the date of Plaintiff's hearing before the ALJ, Dr. Moore completed a Physical Capacities Evaluation. Tr. 341. In pertinent part, Dr. Moore indicated his belief that Plaintiff can sit for two hours at a time, and stand for one hour at a time, and that, in an eight-hour workday, she can sit for up to four hours and stand and walk for up to two hours. Tr. 341. Dr. Moore also opined that Plaintiff can frequently lift or carry up to five pounds, occasionally lift or carry up to twenty pounds, and never lift or carry more than twenty pounds. Tr. 341. Apart from his conclusion that Plaintiff should never crawl, he opined no other serious or unusual limitations or restrictions on Plaintiff's exertional or postural abilities. Tr. 341. On July 30, 2014, Dr. Moore followed-up his Physical Capacities Evaluation with a letter further explaining his findings. In the letter, Dr. Moore explained that the surgical implant Plaintiff received in 2010 in Romania, "is still causing severe urinary tract dysfunction." Tr. 342. Dr. Moore succinctly delivered his medical judgment as follows:

> Given [Plaintiff's] surgical history, it is my opinion, based on a reasonable degree of medical certainty, that she should not be lifting or carrying any objects weighing more than 20 pounds. In my opinion, lifting objects weighing greater than 20 pounds likely would cause her to be incontinent,

8

and also would create a substantial risk of injury to [Plaintiff's] surgically repaired bladder, possibly requiring yet another surgery.

Tr. 342.

Notably, the ALJ took a decidedly skeptical view of Plaintiff's visits with Dr. Moore which occurred after she filed her application for supplemental security income. In particular, with regard to Plaintiff's visit in March of 2013, The ALJ speculated that, in waiting "one and one-half months after filing her claim for disability benefits to seek treatment with Dr. Moore again," Plaintiff "sought treatment with Dr. Moore only in an effort to 'build up' her disability claim." Tr. 25.[5] The ALJ likewise speculated that Plaintiff's complaints to Dr. Moore in May of 2014, occurring one month prior to the hearing before the ALJ, were also an attempt to "build-up" her disability claim in advance of the hearing. Tr. 25.

The ALJ's skepticism about Plaintiff's visits with Dr. Moore is reflected in his consideration of Dr. Moore's Physical Capacities Evaluation, which the ALJ derisively refers to as "a last minute medical source statement." Tr. 25. After noting Dr. Moore's opinion about Plaintiff's limitations with respect to sitting, standing, walking, and lifting and carrying, the ALJ noted that he was "not persuaded by any means." Tr. 25. As best the court can tell, the reasons the ALJ was not persuaded are as follows: 1) Plaintiff "made no effort whatsoever to return to work after she returned home from Romania - it appears she just came home and filed for disability;" 2) "[h]er reported activities of daily living . .

---

[5] The ALJ appears to overlook the fact that Plaintiff's March 2013 visit with Dr. Moore was for her annual exam and pap smear. Tr. 288.

. are also inconsistent with Dr. Moore's assessment of functioning, as is her very infrequent need for medical treatment and medications;" 3) the medical record does reflect any prescribed need for further catheterizations following February of 2013; and 4) the ALJ was more persuaded by a consultative examination performed by Dr. Jani. Tr. 25. The ALJ did not address Dr. Moore's letter explaining his reasons for the limitations opined on the Physical Capacities Evaluation, including his statement that "lifting objects weighing greater than 20 pounds likely would cause [Plaintiff] to be incontinent, and also would create a substantial risk of injury to [Plaintiff's] surgically repaired bladder, possibly requiring yet another surgery." Tr. 342.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard

a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.

Plaintiff argues that the ALJ did not articulate the requisite good cause for his rejection of Dr. Moore's opinion evidence. Pl.'s Br. (Doc. 13) at 8-10. The court agrees. First, it is irrelevant that Dr. Moore's opinion was given "last minute" in the ALJ's estimation. The court is aware of no regulation or case law establishing that evidence procured before the close of the administrative record is subject to some sliding scale of probative value based upon when it was procured or introduced into the record. Dr. Moore's opinion is the product of a years-long treatment relationship with Plaintiff, including both surgery and several office visits over the approximately three years preceding his opinion statement. His opinion may not be dismissed merely because the ALJ would characterize it as "last minute." It is likewise irrelevant that Plaintiff did not try to go back to work upon her return from Romania. Apart from conveying the ALJ's open skepticism about the veracity of Plaintiff's complaints, the ALJ offers no explanation as to how the fact that Plaintiff did not attempt to go back to work could have any bearing on the reliability of Dr. Moore's independent, professional medical opinion.

The ALJ's reliance on Plaintiff's activities of daily living to discount Dr. Moore's opinion is likewise unavailing. The activities of daily living described by the ALJ include "taking care of her personal needs unassisted, cooking, doing laundry, washing dishes, cleaning, driving, shopping in stores, spending time with family watching movies and on the phone, and going to church weekly." Tr. 26. At the outset, the court notes that the ALJ

mischaracterizes the record regarding Plaintiff's daily activities. The record does not support that Plaintiff "go[es] to church weekly." Rather, Plaintiff testified that she sometimes misses church two or three times a month due to pain caused by urinary tract infections. Tr. 54-55. In any event, the ALJ fails to explain how any of the activities he highlighted are inconsistent with Dr. Moore's opinion. Again, as set forth above, Dr. Moore opined only a few substantial limitations in Plaintiff's physical capacities and functional abilities, including that she can sit for four hours in an eight-hour work day, stand and/or walk for two hours. Tr. 341. More importantly, Dr. Moore opined that Plaintiff should lift no more than twenty pounds because it would cause her to be incontinent, as well as pose a risk of further injury to Plaintiff's surgically repaired bladder. Tr. 342. The ALJ wholly fails to explain what in the daily activities he cites (grooming and personal care, cooking, common household chores, driving, shopping, and socializing) is inconsistent with Dr. Moore's limitations, especially as it relates to Plaintiff's need to avoid lifting more than twenty pounds.

The ALJ also appears to discount Dr. Moore's opinion because the record does not reflect that Plaintiff sought treatment for her symptoms with sufficient regularity to satisfy the ALJ, and because the record reflects only one physician initiated catheterization after she applied for disability. Of course, at every visit with Dr. Moore, Plaintiff was prescribed medication to treat her conditions and, as Dr. Moore noted, the one catheterization he performed in May of 2014 was very difficult to complete. Furthermore, as discussed above, and as testified by Plaintiff at the hearing, Dr. Moore even assessed a possible utility

12

for additional surgery in May of 2014. *See* Tr. 316, 48. Contrary to the ALJ's apparent conclusion, the record of Dr. Moore's treatment of Plaintiff does not conflict with his opinion or dictate a contrary conclusion.

Finally, Dr. Jani's opinion, as a consultative examiner, does not provide good cause for discounting Dr. Moore's opinion. In general, a consultative examiner's opinion is not entitled to the deference normally given a treating source. *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (one-time examiner's opinion is not entitled to great weight). Moreover, a specialist's opinion generally receives more weight on those issues related to the specialty than the opinion of someone who is not a specialist. 20 C.F.R. § 404.1527(c)(6). As a specialist, and as a treating source, Dr. Moore's opinion about how lifting will impact Plaintiff's continence is plainly entitled to substantial deference. Furthermore, Dr. Jani's opinion is remarkable, if for no other reason, because he specifically opined that Plaintiff, a fifty-five year old woman he diagnosed with "[s]uprapubic pain due to urinary retention" and "[r]ecurrent urinary tract infection" was nevertheless capable of the full range of heavy work (occasionally lifting one hundred pounds, and frequently lifting fifty) "without any restrictions." Tr. 308. Despite his endorsement of Dr. Jani's opinion at the expense of Plaintiff's treating physician, even the ALJ balked at this conclusion. *See* Tr. 25 ("Greater weight is therefore given to Dr. Jani's opinion[], although the undersigned has reduced the

13

claimant from heavy exertion work as set out by Dr. Jani to no more than medium exertion work.").

The ALJ's opinion makes clear that the ALJ was highly skeptical of the severity of Plaintiff's complaints about her symptoms, and that Plaintiff somehow used Dr. Moore in a ploy to obtain disability benefits, rather than enter the workforce, upon her return from mission service in Romania. Perhaps the ALJ's beliefs were reasonable based upon his assessment of Plaintiff's credibility at the hearing. But, in the court's view, the record makes clear that Dr. Moore gave a narrow, reasoned, and nuanced medical opinion, in an area in which he specializes, based upon a years-long treatment relationship he had maintained with Plaintiff. In the absence of good cause for discrediting it, Dr. Moore's opinion is therefore entitled to great weight. If good cause for discrediting Dr. Moore's opinion exists in the record before the court, the ALJ failed to articulate it. Thus, this matter is due to be reversed and remanded to the Commissioner for further proceedings.

## VI. CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is REVERSED and this matter is REMANDED back to the Commissioner of Social Security for further proceedings consistent with this opinion. A separate judgment will issue.

Done this 25th day of April, 2017.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE